UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARTA B. LEIPZIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 12–909 (RJL) |
| | ) | |
| MICHAEL J. ASTRUE. | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION
(June 3, 2013) [#10]

Plaintiff Marta B. Leipzig brings this suit against defendant Michael J. Astrue,

Commissioner of the Social Security Administration ("SSA"), alleging retaliation in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e)

*et seq.*   Before the Court is defendant's Motion to Dismiss ("Def.'s Mot. to Dismiss")

[Dkt. #10].   Upon consideration of the parties' pleadings, relevant law, and the entire

record therein, defendant's motion is GRANTED.

BACKGROUND

On June 21, 2009, plaintiff, a middle-aged white woman, was hired as a Senior

Case Technician ("SCT") in the SSA's Office of Disability Adjudication and Review

("ODAR") in Washington, D.C. for a two-year trial period.[1]   Compl. ¶¶ 1, 6 [Dkt. #1].

---

[1] Although the Complaint notes the races of several individuals involved in this case, it does not plead (or even hint at) a racial discrimination claim.   In her opposition to dismissal, plaintiff for the first time alleges that some of her

As a SCT, plaintiff assisted in the administrative adjudication of appeals brought by individuals denied Social Security and Social Security Insurance benefits.  *Id.* ¶ 8.   In addition to her regular SCT work, plaintiff performed clerical and technical tasks as a personal clerk to an administrative law judge and frequently filled in as the receptionist at the front desk of ODAR.  *Id.* ¶¶ 9, 11.

Three months after plaintiff commenced her job with SSA, an African American male co-worker physically assaulted her, prompting her to file an informal Equal Employment Opportunity ("EEO") complaint.  *Id.* ¶ 13.   The co-worker, meanwhile, claimed that plaintiff attacked him.  *Id.*   Plaintiff's supervisor, Hariette Hindie ("Hindie"), responded to the incident by interrogating plaintiff in a *Weingarten* session, which allows for an employee to bring a union representative to any management inquiry that the employee reasonably believes might result in discipline.  *Id.*; *see also NLRB v. Weingarten, Inc.*, 420 U.S. 521 (1975).   When an SSA EEO official told plaintiff that formal EEO complaints must be filed against "management," plaintiff decided not to pursue a formal complaint for fear of losing her job.  Compl. ¶ 13.   Although plaintiff did not take any formal action, SSA management knew of her communications with the EEO regarding the assault.  *Id.*

On May 26, 2010, the African-American male co-worker who had been the subject

---

supervisor's actions may have been based on race.  Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 5 [Dkt. #13]. It is well established that the Court will not entertain claims that appear for the first time in responses to dispositive motions. *See, e.g., Richardson v. Capital One, N.A.*, 839 F. Supp. 2d 197, 202–03 (D.D.C. 2012).  In any event, the Court accepts these facts as true but notes that they are irrelevant to the only claim in the Complaint, which is for

of plaintiff's prior EEO complaint physically attacked another SSA employee, an African American woman named Robin Adams.  *Id.* ¶ 14.   On this occasion, armed police removed the co-worker shortly after the assault, and SSA management responded with great concern for the victim.   In addition, the Department of Homeland Security participated in the ensuing investigation.  *Id.*

Soon after this incident, plaintiff earned a promotion, effective June 2010, to a General Schedule ("GS") level seven from a GS level six.  *Id.* ¶ 12.   Hindie supported the promotion, which was based on plaintiff's job performance during the first year of a two-year probationary period.  *Id.*   In the following months, however, Hindie began scrutinizing plaintiff's work more closely, and in September, she gave plaintiff a counseling memorandum that identified specific problems with her recent job performance.  *Id.* ¶¶ 16–17.   Plaintiff responded by defending her performance in a rebuttal memorandum, presented to Hindie both orally and in writing.  *Id.* ¶ 18.

On November 22, 2010, Hindie recommended plaintiff's termination on the basis of poor work performance during the second year of plaintiff's probationary period.  *Id.* Plaintiff sought the support of the two lead SCTs, both of whom submitted signed statements contradicting Hindie's basis for plaintiff's termination.  *Id.* ¶ 19.   Hindie proceeded with plaintiff's termination nonetheless.  *Id.*   After learning that she would not have the opportunity to appeal her termination, plaintiff resigned effective January 5,

---

retaliation based on a protected activity.

2011 to avoid embarrassment, increase her chances of obtaining future employment, and leave a work environment that caused her stress-related illnesses.   *Id.* ¶¶ 21–22.

Following her resignation, plaintiff filed a formal EEO complaint against SSA management, alleging retaliation and coerced resignation.   *Id.*   ¶¶ 22–23.   Plaintiff filed this suit on June 5, 2012, seeking, among other things, compensatory damages, reinstatement with back pay, transfer to a position of her choice, official performance appraisals of "excellent" for every year since her hiring (including post-resignation years in which she did not work for SSA at all), and legal fees.   *Id.* ¶ 25.

On September 10, 2012, defendant moved to dismiss plaintiff's complaint.   *See* Def.'s Mot. to Dismiss.   For the following reasons, defendant's motion is GRANTED.

## LEGAL STANDARD

Defendant moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that it fails to state a claim upon which relief can be granted.   In evaluating defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged."   *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations and internal quotation marks omitted).   Rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted); *see also Twombly*, 550 U.S. at 555 (factual allegations must "be enough to raise a right to relief above the speculative level").   "[T]he court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).   Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ANALYSIS

"In order to prevail upon a claim of unlawful retaliation, an employee must show she engaged in protected activity, *as a consequence of which* her employer took a materially adverse action against her." *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (emphasis added; internal quotation marks omitted); *see also* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 1–2 (noting that Complaint "must allege that the adverse [employment] action was taken in retaliation for . . . her protected activity," and it "fails a Rule 12(b)(6) challenge if it does not specify the adverse action or the

causal connection.").

The alleged adverse action—SSA's proposed termination of plaintiff's employment—is not in dispute.   Plaintiff, however, has failed to plead facts that would allow the Court reasonably to infer that defendant retaliated against her *because of her prior protected activity*.   In fact, the Complaint pleads the opposite: that plaintiff's proposed termination was the result of events and motives unrelated to her EEO contact.

According to the Complaint, "the greatest change with regard to plaintiff's employment situation at the hands of the management" came "sometime following the immediate period after the Adams' assault."   Compl. ¶ 15.   Only then did plaintiff experience a "sharp, negative turn" in the workplace.   *Id.*   Plaintiff alleges no facts linking either the assault on her coworker or defendant's response to that assault, on the one hand, to plaintiff's informal EEO complaint, on the other.

Instead, plaintiff alleges that Hindie's increased scrutiny and proposed termination of plaintiff stemmed from the supervisor's "apparent embarrassment at not having properly reacted" to plaintiff's assault claims seven months prior.   *Id.* ¶ 17.   Accepting, as the Court must, that Hindie was "embarrassed" by her handling of the earlier assault allegation, the Complaint pleads that it was this personal sense of embarrassment—not plaintiff's informal EEO complaint—that caused Hindie to scrutinize plaintiff and ultimately propose her termination.   Responding to defendant's motion to dismiss, plaintiff reiterates that Hindie was embarrassed by her own "poor management," which

"became even more obvious – and thus more embarrassing – when [her alleged attacker] assaulted another female co-worker," Pl.'s Opp'n at 5, and this led to plaintiff's termination.

Yet, plaintiff pleads no facts to support the great inferential leaps that she asks the Court to make, from plaintiff's EEO communications, to Hindie's embarrassment following the second assault, to plaintiff's proposed termination.   The Court cannot, on the sole basis of plaintiff's vague and conclusory allegation that her supervisor was embarrassed by her own job performance, reasonably infer retaliation against plaintiff. The Complaint therefore fails to plead facts sufficient to support a plausible claim that Hindie retaliated against plaintiff because of her protected communications with EEO.

Finally, it is also noteworthy that, according to the Complaint, plaintiff contacted EEO in October 2009, Compl. ¶ 13, but the alleged retaliation did not begin for another nine months in approximately July 2010, *id.* ¶ 17.   In the interim, Hindie *supported* plaintiff's positive employment evaluation and promotion.   *Id.* ¶ 12.   Thus, even assuming that retaliation could occur nine months after a protected activity *and* a positive evaluation and promotion, plaintiff has failed to plead any facts that would allow the Court to infer the necessary causation in this case.   *See, e.g.*, *Taylor*, 571 F.3d at 1322 (no inference of retaliation based on two-month proximity; collecting cases holding same); *Peterson v. Hantman*, 2006 WL 1442662, at *9 (D.D.C. May 25, 2006) (causal link broken by five-month interval and intervening promotion).

7

## CONCLUSION

For all the foregoing reasons, defendant's Motion to Dismiss [#10] is hereby

GRANTED.   An appropriate order shall accompany this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge